IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KATIE MURRAY, | * |
| *Plaintiff*, | * |
| v. | *   Civil Action No. RDB-25-309 |
| AMEDISYS HOLDING, LLC, | * |
| *Defendant*. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On February 16, 2024, Plaintiff Katie Murray, a registered nurse in Salisbury, Maryland, was involved in a domestic dispute at her home with her husband, which resulted in his calling the police and claiming that she assaulted him. Murray was arrested and placed in jail. On February 20, after being released from jail and retaining defense counsel, she informed her employer, Defendant Amedisys Holding, LLC, of her arrest. Amedisys is a Louisiana-based, national provider of home health and hospice services. She told the company's Director of its Salisbury, Maryland Operations, Christine Spencer, that the arrest was not work related and that she expected to be found not guilty. Spencer told Murray to send all documents relating to the incident, including the police report, but Murray declined to do so. Amedisys then suspended Murray pending an internal investigation. On March 8, 2024, the company fired her for failing to cooperate with the investigation.

On March 25, 2024, Murray was tried and found not guilty of all charges. Some time later, she sought and received an expungement of her criminal record. On January 30, 2025,

she brought this one-count Maryland wrongful discharge action against Amedisys.[1] (ECF No. 1) She alleges that her termination violated a clear mandate of Maryland public policy, specifically the State's policy pronounced in Md. Code Ann., Crim. Proc. § 10-109 (West 2025), which, *inter alia*, prohibits employers from discharging or not hiring a person for refusing to disclose expunged criminal records concerning charges not resulting in a conviction or pardoned convictions.

Now pending is Amedisys's Motion to Dismiss Murray's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6) Amedisys argues that § 10-109 does not create a private right of action allowing Murray to sue. (ECF No. 6-1 at 1–2) It also argues that § 10-109 does not contain a clear mandate of public policy making Amedisys's termination of Murray actionable. (*Id.* at 2) The Court has reviewed the parties' submissions; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the Court GRANTS Amedisys's Motion to Dismiss (ECF No. 6). Murray's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.

## BACKGROUND

When ruling on a motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences from them in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court takes

---

[1] The jurisdiction of this Court is based on 28 U.S.C. § 1332 in that Murray is a Maryland citizen, Defendant Amedisys is a Louisiana limited liability company, and the amount in controversy exceeds $75,000.

the facts below from the Complaint (ECF No. 1) and accepts them as true solely for the purpose of ruling on this Motion (ECF No. 6).

Plaintiff Katie Murray is a registered nurse who was hired by Defendant Amedisys Holding, LLC, on July 31, 2023. (ECF No. 1 at 2 ¶ 1) Amedisys is a Louisiana-based, national provider of home health, hospice, and palliative care. (*Id.* at 2 ¶ 4; ECF No. 6-1 at 2) Murray worked for Amedisys at its Salisbury, Maryland facility. (ECF No. 1 at 2 ¶ 3) On February 16, 2024, Murray was involved in a domestic dispute with her husband at her home, which resulted in his calling the police and claiming that she had assaulted him. (*Id.* at 2–3 ¶ 2) Murray was arrested put in jail. (*Id.* at 2–3 ¶ 2) On February 20, 2024, after she was released from jail[2] and retained defense counsel, Murray contacted Amedisys's Director of its Salisbury, Maryland Operations, Christine Spencer, of her arrest. (*Id.*) During that conversation, Murray also told Spencer that the arrest was not work related and that she anticipated being found not guilty. (*Id.*) Citing company policy, Spencer told Murray to send all documents relating to the incident, including the police report, to Amedisys's Human Resources Department. (*Id.* at 3 ¶ 4) Murray refused to hand over the documents but told Spencer that all case information was available on the publicly-available Maryland judiciary website, "Case Search." (*Id.* at 3 ¶ 5)

Three days later, on February 23, 2024, Murray's attorney sent Spencer a letter telling her that Murray's criminal case would be tried on March 25, 2024. (*Id.* at 3 ¶ 6) Based upon Murray's refusal to hand over documents, Amedisys suspended her without pay concurrent

---

[2] The Complaint (ECF No. 1) does not make clear how long Murray was incarcerated. That is irrelevant to this decision, of course, but the Court notes all the same that by February 20, 2024, at the latest Murray had been released and had retained defense counsel. (*Id.* at 2–3 ¶ 2)

with an internal investigation on the matter. (*Id.* at 3 ¶ 7) On February 26, 2024, Murray's attorney sent a letter to Nicole Rome, an employee in Amedisys's Human Resources Department. (*Id.* at 4 ¶ 8). Murray alleges that her attorney received no response. (*Id.*) On March 8, 2024, Amedisys terminated Murray for failing to comply with an internal investigation. (*Id.* at 4 ¶ 9) On March 25, 2024, Murray was tried in the Circuit Court for Wicomoco County and found not guilty of all charges. (*Id.* at 4 ¶ 10) At some time thereafter, Murray sought and received an expungement of her criminal record. (*Id.*)

Ten months later, on January 30, 2025, Murray filed this case. She alleges one count of Maryland wrongful discharge by Amedisys. (*Id.* at 2) She claims that her termination violated a clear mandate of Maryland public policy, specifically the policy pronounced in Md. Code Ann., Crim. Proc. § 10-109 (West 2025), which prohibits an employer from taking adverse action against an employee for refusing to disclose expunged criminal records containing charges not resulting in a conviction or pardoned convictions. Murray alleges that Amedisys's conduct caused her to suffer lost wages and employment benefits and emotional distress. (*Id.* at 4 ¶ 12)

On March 7, 2025, Amedisys filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). Amedisys makes two arguments for dismissal. First, it asserts that § 10-109 does not provide Murray with a private right of action. (ECF No. 6-1 at 1–2) Second, Amedisys contends that there is no "preexisting, unambiguous, and particularized public policy pronouncement contained in § 10-109;" and that even if there were, it would not apply to Amedisys's conduct because Amedisys fired Murray before her criminal record was expunged. (*Id.* at 2) This matter is ripe for review.

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive such a motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**ANALYSIS**

Amedisys seeks dismissal with prejudice of Murray's wrongful discharge claim. (ECF No. 6) Amedisys brings two arguments in support of its Motion. First, it argues that § 10-109 of the Maryland Criminal Procedure Code does not provide a private right of action. (ECF No. 6-1 at 1–2, 4–7) Second, Amedisys argues that Murray has not sufficiently pleaded a common-law claim of wrongful discharge because she has not shown that Amedisys violated any clear mandate of Maryland public policy—the second element of the Maryland wrongful discharge tort. (*Id.* at 7–10). In her Response, Murray acknowledges that § 10-109 does not create a private remedy for alleged violations. (ECF No. 11-1 at 5) Nevertheless, she contends that the law is an element of her claim for wrongful discharge. (*Id.*) Accordingly, the Court analyzes Murray's claim for wrongful discharge in the context of her public policy argument.

**I.    Wrongful Discharge**

Under Maryland law, an employer may generally terminate an at-will[3] employee at any time for any reason. *Wholey v. Sears Roebuck*, 803 A.2d 482, 487–88 (Md. 2002) (citing *Suburban Hosp., Inc. v. Dwiggins*, 596 A.2d 1069, 1073 (Md. 1991)). The tort of wrongful discharge is an exception to that general rule. *Id.* at 488. It provides that "an employee who has been 'discharged in a manner that contravenes public policy' may 'maintain a cause of action for abusive or wrongful discharge against [her] former employer.'" *Id.* (quoting *Adler v. Am. Standard Corp.*, 432 A.2d 464, 467 (Md. 1981)). To plead a claim of wrongful discharge under Maryland law, an employee must show (1) discharge by her employer, (2) a basis for discharge that violates some clear mandate of public policy, and (3) a nexus between the employee's conduct and the employer's decision to fire. *Wholey*, 803 A.2d at 489. The tort of wrongful discharge is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 (Md. 1989). "[F]or a public policy to be considered sufficiently established to form the basis of a wrongful discharge action, 'there must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting the conduct in question so as to make the Maryland public policy on the topic not a matter of conjecture or even interpretation.'" *King v. Marriott Int'l Inc.*, 866 A.2d 895, 902–03 (Md. Ct. Spec. App. 2005) (quoting *Sears, Roebuck & Co. v. Wholey*, 779 A.2d 408, 419(2001), *aff'd*, 802 A.2d 482 (2002)).

---

[3] Both parties address Murray as having been an at-will employee. (ECF No. 6-1 at 7; ECF No. 11-1) Her status as such is not disputed.

6

To plead the second element of her claim of wrongful discharge, Murray contends that her discharge was a violation of § 10-109 of the Maryland Criminal Procedure Code. (ECF No. 1 4–5 ¶¶ 11, 13) She claims that that statute "prohibits employers from taking adverse action against an employee for refusing to disclose criminal records which have been expunged, charges not resulting in a conviction, or pardoned convictions." (*Id.* at 4 ¶ 11) She argues that her termination "[m]anifestly" violated § 10-109 in that "it was based upon charges not resulting in a conviction and promptly expunged." (*Id.*)

Amedisys raises two arguments contesting Murray's ability to meet the second element of the wrongful discharge tort. (ECF No. 6-1 at 7) First, Amedisys argues that Murray has not sufficiently alleged that § 10-109 of the Maryland Criminal Procedure Code is a "clear mandate of public policy" such that it satisfies the second element of a wrongful discharge claim. (*Id.* at 8) Amedisys contends that the Complaint (ECF No. 1) does not "'specifically identify the clear mandate of Maryland public policy that was violated by h[er] termination.'" (ECF No 6-1 at 8 (quoting *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002)). The company asserts that this alone is grounds for dismissal, because "a complaint must plead with particularity the source of the public policy and alleged violation." (*Id.* (quoting *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002)).

Second, Amedisys argues that even if Murray sufficiently pleaded § 10-109 as a clear mandate of Maryland public policy, she nonetheless cannot plead the second element of her wrongful discharge claim. (*Id.* at 9) Quite simply, Amedisys's termination of Murray did not run afoul of that statute. (*Id.* at 9) The company claims that an employer only violates § 10-109 if it discharges an employee because of criminal or police records which had *already* been

7

expunged at the time of discharge. (*Id.*) Therefore, Amedisys argues, its termination of Murray seventeen days before her trial, and more than seventeen days before her criminal record was expunged, does not trigger the statute. (ECF No. 1 at 4 ¶¶ 9–10) Essentially, Amedisys argues that dismissal is proper here because Murray fails to plead the second element as a matter of law.

The Court does not reach the first argument because Murray clearly fails under the second. That is, even if § 10-109 is a clear mandate of public policy, Amedisys did not violate that policy here. As explained below, Maryland's § 10-109 is only concerned with criminal charges that did not result in a conviction,[4] *and* which were expunged in the *past*. It does not set a clear mandate of public policy against employers using *current* criminal charges in their decisions to discharge or not hire.

To determine the scope and meaning of § 10-109, this Court adheres to the Supreme Court of Maryland's method of statutory interpretation. *United States v. Lierman*, 151 U.S. F.4th 530, 536 (4th Cir. 2025). As such, the Court begins with "the statute's plain language." *Williams v. State*, 340 A.3d 906, 913 (Md. 2025) (citing *Buarque de Macedo v. Auto. Ins. Co. of Hartford, Conn.*, 280 A.3d 679, 688 (Md. 2022)). If the statute's language is "'unambiguous and clearly consistent with the statute's apparent purpose," the Court applies it "'as written.'" *Id.* (quoting *Bennett v. Hartford Cnty.*, 301 A.3d 117, 131 (Md. 2023)). Apparent purpose is derived by "view[ing] the plain language within the context of the statutory scheme to which it belongs,

---

[4] The statute also talks of convictions pardoned by the Governor, *see* Crim. Proc. § 10-109(a)(2)(ii), but that is not relevant here.

considering the purpose, aim, or policy of the Legislature in enacting the statute." *Lockshin v. Semsker*, 987 A.2d 18, 29 (Md. 2010).

Section 10-109(a) is part of Criminal Procedure Article Title 10, Subtitle 1, entitled "Expungement of Police and Court Records." Multiple provisions of the subtitle are procedural, providing individuals the means to seek expungement of various types of police or criminal records. *See* Md. Code Ann., Crim. Proc. § 10-103 (West 2025) (expungement of police records when no charge is filed); *id.* § 10-103.1 (expungement of police records after release without charge); *id.* § 10-104 (expungement of nolle prosequi before service); *id.* § 10-105 (expungement of record after charge is filed); *id.* § 10-105.3 (application for resentencing for possession of cannabis); *id.* § 10-106 (expungement of criminal charges transferred to juvenile court); *id.* § 10-110 (petition for expungement). Other provisions require action by the State in dealing with or disposing of such records. *See id.* § 105.1 (outlining the circumstances in which expungement is required after a certain amount of time and the Maryland court's obligation to provide notice of expungement); *id.* § 10-105.2 (imposing on the Maryland court, as appropriate, a duty to notify persons of their right to expungement); *id.* §§ 10-111 and 10-112 (prohibiting the Maryland Judiciary Case Search from referring to the existence of a certain set of cannabis cases).

Only two provisions of this subtitle, however, carry the possibility of criminal penalty: § 10-108 and § 10-109. Section 10-108 prohibits individuals from opening, reviewing, or disclosing another person's expunged record without a court order. This law's logic is self-evident; once expunged, a police or criminal record should not be opened or used against its subject except in those limited circumstances justifying a court order. As the Supreme Court

9

of Maryland[5] noted in *Stoddard v. State*, 911 A.2d 1245, 1251 (Md. 2006), § 10-108 seeks, in part, to protect the educational opportunities of a person with an expunged criminal record by requiring that record to remain unopened and unviewed in almost all circumstances. Therefore, a person who violates § 10-108 is subject to criminal penalties, including fines and imprisonment of not more than one year.

Section 10-109 is similar to its counterpart, § 10-108, but concerns itself with employment prospects. *See Stoddard*, 911 A.2d at 1251. This section provides, in relevant part, that:

> (1) Disclosure of expunged information about criminal charges in an application, interview, or other means may not be required:
>
>> (i) by an employer or educational institution of a person who applies for employment or admission; or
>>
>> (ii) by a unit, official, or employee of the State or a political subdivision of the State of a person who applies for a license, permit, registration, or governmental service
>
> (2) A person need not refer to or give information concerning an expunged charge when answering a question concerning:
>
>> (i) a criminal charge that did not result in a conviction; or
>>
>> (ii) a conviction that the Governor pardoned.
>
> (3) Refusal by a person to disclose information about criminal charges that have been expunged may not be the sole reason for:
>
>> (i) an employer to discharge or refuse to hire the person; or

---

[5] Prior to December 14, 2022, the highest court of Maryland was named the Court of Appeals of Maryland. During the November 2022 General Election, Marylanders voted to approve a state constitutional amendment changing the name. As such, the State's highest court has been named the Supreme Court of Maryland since December 14, 2022.

>> (ii) a unit, official, or employee of the State or a political subdivision of the State to deny the person's application.

Md. Code Ann., Crim. Proc. § 10-109(a). Subsection (b) sets out the criminal penalties, which mirror those permitted under § 10-108.

From the statutory context of Title 10, Subtitle 1 and the plain language of § 10-109, this section is clearly concerned only with discharges by employers of employees whose criminal records have *already* been expunged. This reading gives the statute its plain and ordinary meaning. *See Williams*, 340 A.3d at 913. Section 10-109 uses the past tense terms "expunged information," "expunged charge," and "criminal charges that have been expunged." Crim. Proc. § 10-109(a)(1)–(3). It also speaks in past tense when it references "a criminal charge that did not result in a conviction" and "a conviction that the Governor pardoned." *Id.* § 10-109(a)(2)(i)–(ii). The unambiguous meaning of the General Assembly's choice of tense is that employers are proscribed from using an employee's or applicant's previously-expunged criminal record to that person's detriment. In sum, § 10-109 is limited to criminal records that were already expunged by the time the employer asked about them or made an adverse decision based on them. The section does not criminalize employers for asking an employee about criminal records that are not expunged. Likewise, employers do not violate § 10-109 when they discharge or refuse to hire a person for a criminal record that is not expunged.

This plain meaning is harmonious with "'the statute's apparent purpose,'" which the Court derives from looking at the law "'within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.'"

11

*Williams*, 340 A.3d at 913 (first quoting *Bennett*, 301 A.3d at 131; then quoting *Lockshin*, 987 A.2d at 29). Here, the plain meaning of § 10-109 is entirely consistent with the statute's evident goals. As outlined above, Title 10, Subtitle 1 of the Criminal Procedure code has multiple types of provisions. It provides avenues to get records expunged, requires notice be provided to certain individuals whose records are eligible for expungement, and punishes those persons and companies that use expunged police or criminal records against their subject. Md. Code Ann., Crim. Proc. tit. X, subtit. 1. Viewed as a whole, the subtitle is a comprehensive scheme for getting a police or criminal record expunged and then enjoying the concomitant benefits, including employment benefits, of expungement. It is entirely consistent with that scheme that no punishment lies when an employer relies on an existing, non-expunged criminal record when deciding to discharge or not hire a person. Indeed, to read § 10-109 as opening employers up to criminal liability for such conduct would make the section incongruous with the rest of the subtitle.

Reading § 10-109 as applying only to previously-expunged police or criminal records is further justified by the way that reading dovetails with the only other criminal section in the subtitle, § 10-108. As noted above, § 10-108 prohibits individuals from "open[ing] or review[ing] an expunged record or disclos[ing] to another person any information from that record without a court order." Crim. Proc. § 10-108(a). Taken together, §§ 10-108 and 10-109 set out extensive protection for anyone whose criminal records have already been expunged from having those records used against them. Section 10-108 broadly proscribes others from looking into expunged records; § 10-109 specifically ensures that employment will not be affected on the basis of expunged records. Crucially, however, both sections limit themselves

12

in time. That is, neither section is triggered unless and until the police or criminal records at issue have been expunged. Conversely, and focused on § 10-109, an employer's use of criminal records which have not been expunged as grounds for discharge does not implicate that section. For both sections, this is true even when the criminal record may be expunged in the future.

This reading is also consonant with the purpose and aim of the General Assembly in enacting § 10-109. As the Supreme Court of Maryland explained in *Stoddard*, "[o]ne of the General Assembly's purposes in providing for an expungement procedure was to help protect individuals seeking employment or admission to an educational institution." 911 A.2d at 1251 (citing Crim. Proc. § 10-109). "To further this purpose, the General Assembly expressly prohibited potential employers and academic institutions from requiring applicants to disclose information about expunged criminal charges, subject to a heavy penalty for violation." *Id.* (citing Crim. Proc. § 10-109). In sum, the plain meaning of § 10-109 is that it applies only to those police or criminal records which are already expunged at the time of the employment application or when the employer discharges the employee.

Applied to this case, even if § 10-109 sets out a clear mandate of public policy such that it *could* support the second element of a Maryland wrongful discharge claim, Murray cannot use the statute here. She was discharged by Amedisys on March 8, 2024. (ECF No. 1 at 4 ¶ 9) Her criminal trial was seventeen days later on March 25. (*Id.* at 4 ¶ 10) Her criminal record was not expunged until some later date. As a matter of law, Amedisys did not violate § 10-109 when it terminated Murray because her criminal records had not yet been expunged. Therefore, Amedisys's Motion to Dismiss (ECF No. 6) is GRANTED.

13

## II. Manner of Dismissal

In its Motion to Dismiss, Amedisys seeks dismissal with prejudice. (ECF No. 6 at 1) "'The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court.'" *Sharma v. Rushmore Loan Mgmt. Servs., LLC*, 611 F. Supp. 3d 63, 86 (D. Md. 2020) (quoting *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013)). Dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support her claim. *Id.* (quoting *Weigel*, 950 F. Supp. 2d at 826). Dismissal with prejudice is proper here as there is no set of facts Murray could plead to show that § 10-109 applies to her. As explained previously, the law's prohibitions are time-barred, kicking in only after a criminal record has been expunged. Murray was discharged at least seventeen days before her records were expunged. The Complaint (ECF No. 1) is therefore DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Amedisys's Motion to Dismiss (ECF No. 6) is GRANTED. Murray's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.

A separate Order follows.

Date: November 20, 2025

/s/
Richard D. Bennett
United States Senior District Judge